the property when he seized it in foreclosure of the mortgage.

In this connection we may appropriately quote from what was said by this court in Consolidated Association of the Planters of La. v. J. W. Mason, 24 La. Ann. 518:

"We are not prepared to fix the line between a valid and an invalid or sufficient or insufficient description, which shall serve as a guide in all future cases. Each case must depend on its own circumstances. In this case we cannot say that the act is so deficient in the description of the property in regard to its nature and situation as to render the mortgage invalid."

For the reasons stated the judgment appealed from is affirmed, at appellants' cost.

---

(102 So. 658)

No. 25955.

**ALLEN et al. v. ROY.**

(Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

**Mines and minerals** ⊙⇒74—**Burden of proof of fraudulent filling in assignment of lease signed in blank, not sustained.**

Plaintiff in suit to annul an assignment of an oil lease, as having been signed by him in blank and fraudulently filled in by defendant, *held* under the evidence to have failed to sustain his burden of proof.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Suit by W. E. Allen and another against R. C. Roy. From judgment for plaintiffs, defendant appeals. Reversed, and judgment directed.

Blanchard, Goldstein & Walker, of Shreveport, for appellant.

Cook & Cook, of Shreveport, for appellees.

ROGERS, J. This is a suit to annul an assignment of a certain oil and gas lease, and to have the registry thereof stricken from the conveyance records of the parish of Bossier, where the land is situated. The lease in question was procured from Samuel Bankhead, the owner of the property, by plaintiff Allen, and the assignment which is the subject of attack is purported to have been made by the said lessee to defendant.

The plaintiffs are W. E. Allen and Z. R. Lawhon. The latter sues as the assignee of Allen under an undated and, apparently, unrecorded assignment of the Bankhead lease.

Plaintiffs admit that the signature of Allen to the assignment sought to be canceled is genuine, but they deny that he executed and delivered said assignment; they aver that the defendant obtained a form of assignment which had been signed in blank by Allen, and wrongfully and maliciously, and without authority so to do, inserted the description of the leased property therein; that there never had been any agreement between Allen and defendant for the assignment of any lease on said property, said defendant having refused to accept such assignment; and that defendant had never paid any consideration for said assignment.

On an objection of inconsistency between the allegation of nonexecution of the lease, and the allegation of failure of consideration therefor, the evidence of payment vel non was restricted to its effect on the question of execution and delivery.

The court below disregarded the alleged assignment from Allen to Lawhon, no evidence having been offered in support thereof, and, on the issues as between Allen and defendant, rendered judgment annulling the assignment and ordering its cancellation from the conveyance records of Bossier parish. From this judgment, defendant appealed.

The sole question involved is whether the plaintiff Allen executed a blank assignment of the Bankhead lease and left it with defendant who, without any authority or agreement so to do, had the blank spaces filled out

and then placed the instrument as thus completed of record in Bossier parish.

The record shows that defendant, a resident of the city of Shreveport, engaged in the purchase and operation of oil properties in the North Louisiana field, would locate or indicate certain prospective territory in Bossier and Webster parishes, on which he desired leases, and plaintiff Allen, a merchant of the village of Sarepta in Webster parish, would procure such leases as he could and assign them to defendant at a profit.

Allen, on February 2, 1922, procured the Bankhead lease on 100 acres of land at $7.50 per acre, promising to make payment later.

On April 24, 1922, an assignment of this lease from Allen to defendant, dated April 20, 1922, was filed and recorded in the conveyance records of the parish of Bossier. This is the assignment which is under attack in this suit.

Plaintiff Allen claims that defendant caused him to execute an assignment in blank in order that he might include in it a lease on the whole of the Bankhead property, containing 160 acres, and that, failing to secure the additional 60 acres, defendant refused to take an assignment to any of it and agreed to destroy, and had reported that he had destroyed, the said assignment in blank; but that, instead of doing so, he inserted the description of the Bankhead lease on 100 acres, and had the same recorded.

These charges are denied by defendant, who contends that the assignment as recorded was duly executed by Allen for a valuable consideration.

The question as thus presented involves a naked question of fraud which plaintiff alleges was practiced upon him by defendant. Fraud is never presumed. Like all other actions it must be proved by the one alleging it. This, we think, plaintiff has failed to do. From our careful examination of the record, we are clearly of the opinion that the case

is with the defendant, and that the judgment of the court below is erroneous.

In order to make out his case, plaintiff relies solely upon his own testimony, and upon certain documentary evidence offered by him in support thereof.

We are not impressed with plaintiff's testimony. His story of the circumstances under which the alleged blank assignment was delivered to defendant is, substantially, that he had obtained a lease on 100 acres of land owned by one Samuel Bankhead; that defendant had practically accepted the title and agreed to buy said lease; and that he had, through his bank at Sarepta, La., drawn a draft of $1,000 on defendant to pay for same; that when he called at defendant's office in reference to the assignment of said lease, defendant informed him that Bankhead owned an additional 60 acres of land adjoining the leased property, and that he, defendant, desired to obtain a lease on the said 60 acres as well as on the 100 acres, but that he wanted to get all the property in one lease, and instructed plaintiff to obtain a new lease from Bankhead for the entire tract of 160 acres; that he, plaintiff, agreed to do this, whereupon, defendant requested him to give him a blank assignment, and at the same time further stated:

"Let this $1,000 draft stay here, and when we get the other we will put these two together, and then I will send you a check for all of it and fill out that blank assignment."

That defendant then gave him a document completely filled out, embracing all of the Bankhead land, which he, plaintiff, was to endeavor to have Bankhead execute; and, at the same time, plaintiff signed and delivered to defendant the blank assignment.

When, on cross-examination, plaintiff was pressed to fix the date of the execution of the alleged blank assignment he was unable to do so even approximately. He swore, however, that the $1,000 draft for the Bankhead lease of 100 acres was in defendant's

office at the time. It is difficult to reconcile this statement with the documents themselves. The draft was dated May 4, 1922, but the instrument which was prepared to be signed by Bankhead was dated the ———— day of April, 1922, and the assignment by Allen to defendant was dated April 20, 1922, and it was filed and recorded on April 24, 1922.

Again, on September 6, 1922, in an affidavit which he caused to be registered in the conveyance records of Bossier Parish, Allen swore that he executed an assignment of the Bankhead lease to defendant under date of May 4, 1922, and on the same day drew a draft on him for $1,000, expecting that the assignment would be accepted and the draft paid, but that both assignment and draft were refused and returned; that thereafter the affiant was informed that a similar assignment "purporting to be signed by said W. E. Allen," but which was a forgery, "now appears on the conveyance records of Bossier parish, Louisiana." However, 8 days later, in his petition to annul the assignment, plaintiff admitted his signature to be genuine, but averred that the description of the leased property had been inserted without his authority. These inconsistencies and contradictions in the testimony of Allen and of the documents referred to are not such as to commend the witness to the favorable consideration of this court.

Plaintiff further relies upon his letters of June 6 and 12, 1922, to defendant, and defendant's letter of date May 29, 1922, and a note of defendant, apparently without date, and some memoranda on certain checks issued by defendant. We do not place the same construction on these documents as does plaintiff.

Defendant's story of the transaction is that upon examination of the abstract of title to the Bankhead property which was procured by Allen and delivered to defendant's lawyers for examination, it was discovered that Bankhead owned 160 acres of land in all. That at this time the lease of the one hundred acres to Allen had been executed and recorded. That when Allen assigned this lease to him he requested Allen to procure one lease for the whole acreage direct to him, defendant, and the instrument was prepared accordingly, and itself recited that it was to supersede the lease to W. E. Allen and stipulating for a consideration of $1,350, or at the rate of $7.50 per acre, the same consideration per acre set forth in the lease of one hundred acres which had been paid for to Bankhead at the time Allen endeavored to secure the execution of the second lease for defendant.

It is not satisfactorily explained by plaintiff why he should have left with defendant the blank assignment of a lease to be filled in with a description of the 160-acre tract, when the lease of said tract that he was requested to obtain from Bankhead, the owner, was to defendant personally and not to himself.

Defendant's testimony concerning the execution of the assignment is supported by the testimony of the young lady who was then working for him as his stenographer, who testified in most positive terms that she had filled in the blank spaces, including the description of property, in the instrument; that it was on April 20, 1922, the date being impressed upon her mind because it was the morning following the Galli Curci concert in Shreveport, which occurred on the evening of April 19, 1922, and being the day on which she left for her vacation. She remembered distinctly that Allen, accompanied by his daughter, was in the office of defendant. After preparing the document she left the office on some errand and did not witness its actual execution, the witnesses to that fact being another young lady working in the same office and a Mr. Pryor, then employed as an engineer by defendant. Mr. Pryor swore that he had, on several occa-

sions, witnessed signatures to instruments in defendant's office, and did not believe that he had ever witnessed any instrument which had been signed in blank. He also testified that he recalled that Allen and his daughter were in defendant's office about two weeks after he began working there, corroborating the statement of defendant's stenographer as to the presence of Miss Allen in the office the day the assignment was executed. It is admitted by all parties that the reputation for truth and veracity of the young lady who drew the assignment is beyond question, but her testimony is sought to be disregarded on the ground that she must have been mistaken. We do not view it in that light. Her testimony is given in a straightforward manner and is supported by the incidents which she recalls. Allen admits that he and his daughter came to Shreveport for the purpose of attending the Galli Curci concert on April 19, 1922, but he denies that he was in defendant's office the next morning. His statement is that he called at the office on the night of the concert after its conclusion, which was about midnight. This is denied by defendant, and is improbable besides. Plaintiff did not call his daughter to the witness stand although it is stated in defendant's brief, and not denied by plaintiff, that she was present in court during the trial of the case.

Defendant shows that he paid plaintiff $2,700 for three leases, the Hayes or Harris lease, the Houston lease, and this Bankhead lease. He testified that Allen had promised him the Hayes or Harris lease for $800, but instead had drawn a draft on him for $2,400, which he refused to accept. After several interviews an agreement was reached by which plaintiff was to assign the Hayes, Houston, and Bankhead leases for $2,700, defendant to pay the $2,400 draft, and to give his check for $300 additional, which was done.

Plaintiff disputes this, and points to the fact that he received the $2,700 on April 6, 1922, which was prior to the delivery of the abstract of title of Bankhead property to defendant, and prior to the execution of the assignment, and that it was not defendant's custom to pay for leases until the abstracts of title had been submitted to and approved by his attorneys. Defendant admits that it was not customary on his part to pay for a lease before the abstract of title had been approved by his attorneys. He says, however, that he had departed from that custom in the present case because of the differences which arose concerning the Hayes and Houston leases, and in order to bring the matter to a close.

Defendant is corroborated in his statement regarding the payment for the Bankhead lease by the testimony of Bankhead himself to the effect that he was not paid for his lease until after April 10, 1922, when Allen called on him to get him to sign up for the other 60 acres. At that time Allen informed him that he had sold the lease to defendant and had been paid for it; and that if he would sign up for the remaining 60 acres he would get his money therefor in a few days. The witness refused to lease the 60 acres, stating that he did not care about executing any other lease. Mr. H. L. Jiles, a white farmer of the neighborhood, was present when Allen called on Bankhead, and he heard Allen state that he had sold the 100-acre lease to defendant. Frank Jackson, also a lessor of Allen, testified that he had been requested by Allen to carry a message to Bankhead to come to see him about leasing the other 60 acres, and to tell him that he, Allen, could pay for the whole thing as he had sold the lease of the 100 acres to defendant.

Plaintiff lays great stress upon the failure of defendant to answer in writing his letters of June 6th and June 12, 1922, requesting defendant to take the Bankhead lease, among others, and pay for it. Defendant,

however, testified that more than once he told plaintiff he had purchased and paid for the Bankhead lease, and that is why he did not pay the draft for that lease. Whether this be correct or not, we do not attach the same importance to the failure of defendant to answer the letters in writing as does the plaintiff. The letters are in themselves self-serving declarations, and defendant, doubtlessly, feeling that he had bought and paid for the lease and that same was duly recorded, concluded that he was not called upon to reply in writing to every unreasonable demand made upon him by plaintiff. It is also a fact that he did not pay the draft which plaintiff had drawn on him for said lease, and he actually returned the draft, with others, in his letter of May 29, 1922. This draft was not returned earlier, but, together with other drafts, was held, at the request of Allen that the drafts be permitted to stay in bank because his bank at Sarepta had cashed the drafts and extended him more credit than it was allowed to do under the law; in the meantime efforts were made to sell some of the leases for Allen's account to other parties. This explanation is offered, also, in connection with the note addressed by defendant to plaintiff in order to prevent the Sarepta bank from promptly proceeding against Allen.

Defendant likewise satisfactorily explains the notation on the $1,000 draft that it was for the Bankhead lease by showing that he thought, when it came in, it was for the second lease and not the first which was already a completed transaction.

The penciled notations on the checks for $2,400 and $300 are shown to have been placed thereon after they were returned from the bank to defendant, and were made solely for bookkeeping purposes. The $2,700 was paid for the three leases, Harris, Houston, and Bankhead. No drafts had been drawn for the Houston and Bankhead leases. No division of the payment for the three leas-es had been made, and the penciled memoranda were resorted to for the purpose of showing the division, arbitrarily made, as entered in defendant's books.

Defendant produced 13 citizens residing in the community where defendant lives who testified that Allen's reputation for truth and veracity was bad. Plaintiff produced 7 witnesses to testify that his reputation was good. It seems to us, however, that there must be something radically wrong with the reputation of a man when 13 of his neighbors out of a sparsely settled community are willing to leave their homes and travel some 30 or more miles to take the witness stand, in a case in which they have no personal interest, to testify against him.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that there be judgment in favor of R. C. Roy, defendant, and against W. E. Allen, plaintiff, rejecting the demands of said plaintiff and dismissing his suit at his costs.